# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RANDAL T. O'DELL, | : | |
| Petitioner, | : | Case No. 3:10cv00205 |
| vs. | : | District Judge Walter Herbert Rice |
| | | Magistrate Judge Sharon L. Ovington |
| TIM BRUNSMAN, Warden, | : | |
| Lebanon Correctional Institution, | | |
| | : | |
| Respondent. | | |
| | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.    Introduction

A jury in Ohio found Petitioner Randal T. O'Dell guilty of committing two felonies: rape and gross sexual imposition.  He is currently incarcerated in state custody serving ten years to life imprisonment.  O'Dell must also register as a sex offender, and "as part of his sentence, [O'Dell] will be supervised by the Parol Board for LIFE Post-Release Control after [his] release from imprisonment."  (Doc. #6, Exhibit 12) (capitalization in original).

O'Dell brings the present case claiming that his trial was marred by many violations of his rights under the United States Constitution.  He thus seeks a writ of

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

habeas corpus under 28 U.S.C. §2254 ordering his immediate release from imprisonment.

The case is pending upon O'Dell's Petition for Writ of Habeas Corpus (Doc. #2), his Motion To Hold in Abeyance (Doc. #4), Respondent's Motion to Dismiss (Doc. #6), and the record as a whole.

## II.    <u>Factual Background</u>

The Ohio Court of Appeals described the facts underlying O'Dell's convictions as follow:

> "The present appeal stems from an incident that occurred in October 2007 when twelve-year-old E.D. spent the night at her friends K.B.'s house. O'Dell, a relative of K.B.'s mother and a family friend, also came to the house that evening. At some point, E.D. and O'Dell fell asleep on the same living room couch. K.B. and her mother fell asleep elsewhere in the living room. According to E.D., O'Dell began moving closer to her as she lay on the couch and pretended to sleep. He then moved his hands under a blanket that was covering her. E.D. testified that O'Dell proceeded to fondle her breasts under her shirt. He then unbuttoned her jeans, placed his hand in her underwear, and inserted his finger into her vagina. K.B. testified that she awoke and saw O'Dell moving around under the blanket. O'Dell later went downstairs into the basement with K.B. that night. According to K.B., he asked her to have sex with him. E.D. testified that she heard K.B. downstairs telling O'Dell, 'No, Randy, no.' O'Dell testified in his own defense and denied touching E.D.'s breasts, placing his hand down her pants, inserting a finger in her vagina, or asking K.B. for sex. A jury found him guilty of rape and gross sexual imposition involving a child under age thirteen for his conduct with E.D...."

(Doc. #6, Exh. 21 at 305-06).[2]

## III.    <u>Procedural History</u>

---

[2]  Citations to page numbers in documents of record refer to the page numbers assigned by the Court's case management electronic filing system.

2

O'Dell raised the following ten assignments of error in the Ohio Court of Appeals

in support of his timely direct appeal:

"FIRST ASSIGNMENT OF ERROR:
Prior counsel was ineffective for not challenging the constitutionality of
R.C. [Ohio Revised Code §] 2907.02(A)(1)(b) for violating the due process
rights of the Defendant.

SECOND ASSIGNMENT OF ERROR:
The trial court erred in not dismissing count one as R. C. 2907.02(A)(1)(b)
violated the due process rights of the Defendant.

THIRD ASSIGNMENT OF ERROR:
Prior counsel was ineffective for not challenging the constitutionality of
R.C. 2907.02(A)(1)(b) for violating the prohibition against cruel and
unusual punishment.

FOURTH ASSIGNMENT OF ERROR:
The trial court erred in not dismissing count one as R.C. 2907.02(A)(1)(b)
violated the prohibition against cruel and unusual punishment.

FIFTH ASSIGNMENT OF ERROR:
Prior counsel was ineffective for failing to file a motion to dismiss the
indictment as no cognizable crime was alleged in count one.

SIXTH ASSIGNMENT OF ERROR:
The trial court erred in not dismissing count one as the indictment failed to
allege a *mens rea* for any element of the offense alleged.

SEVENTH ASSIGNMENT OF ERROR:
Prior counsel was ineffective for failing to renew the objection of the
defense counsel to the introduction of other bad acts evidence into evidence.

EIGHTH ASSIGNMENT OF ERROR:
The trial court erred in allowing into evidence other bad acts in violation of
Evid. R. 404(B).

NINTH ASSIGNMENT OF ERROR:
Prior counsel was ineffective for failing to object to the misconduct of the
prosecutor.

TENTH ASSIGNMENT OF ERROR
The trial court erred in not declaring a mistrial or taking some other
remedial measure in the face of prosecutorial misconduct."

(Doc. #6, Exh. 15 at 141).  On March 6, 2009, the Ohio Court of Appeals issued its

decision finding no merit in O'Dell's assignments of error.

Under the Ohio Supreme Court's procedural rules, O'Dell had forty-five days to

file a Notice of Appeal and his Memorandum in Support of Jurisdiction in the Ohio

Supreme Court.  *See* Ohio S.Ct. Prac. Rules II §2 and III §1.  He therefore had until April

20, 2009 to file in the Ohio Supreme Court.  He did not do so.

Knowing he missed the April 20, 2009 deadline, *see* Doc. #6, Exh. 21 at 327-28,

O'Dell soon filed a pro se Motion for Leave to File Delayed Appeal in the Ohio Supreme

Court.  He noted first that his attorney did not inform him of the Ohio Court of Appeals'

decision until the week of March 12, 2009.  *Id.* at 328.  On this date O'Dell also learned

that he needed to pay his attorney more money to secure his ongoing legal representation.

O'Dell states: "I made the decision to come back before the courts a layman of the law

and do my best."  *Id.*  But he encountered a new problem:  the library computer system at

the Lebanon Correctional Institution, where he was (and is) incarcerated "was down and

not working ... from March 20, 2009 until April 16, 2009...."  *Id.*  O'Dell described his

predicament in his Motion for Leave to File Delayed Appeal:

"So if the court will allow, I now submit my Motion To File A Delayed
Appeal on the grounds that due to an over-crowded prison, and a long
waiting list for inmates trying to do their legal work in a very small
accommodation area, where only 8-10 inmates are permitted at a time and

4

> THEN ADD THE COMPUT[E]RS BEING DOWN FOR SUCH A LONG
> PERIOD OF TIME, EVEN WHEN THE DEADLINE FOR MY APPEAL
> WAS RUNNING REGARDLESS OF THE TROUBLE HERE AT
> LEBANON CORRECTIONS....  IF THE COURT WILL ALLOW, IT
> WAS BEYOND MY CONTROL."

(Doc. #6, Exh. 21 at 328) (capitalization in original).

Attached to O'Dell's Motion is a copy of a Memo dated March 24, 2009 written

under the letterhead of the Ohio Department of Rehabilitation and Correction's

Department of Legal Services.  (Doc. #6, Exh. 21 at 333).  The Memo – addressed to "All

Institutional Librarians" – stated that Westlaw would be unavailable for "a few days and

perhaps as long as a week...."  *Id*.  The Memo suggested:

> "In the meantime, inmates may use the printed materials in the law library
> to conduct their research.  Once Westlaw is back in service, they can update
> their research and if necessary seek to supplement pleadings or memoranda
> with additional authority.  Inmates seeking extension of filing deadlines
> may, upon request, be provided a copy of this memorandum to support such
> motions."

*Id*.

On July 16, 2009, the Ohio Supreme Court denied O'Dell's Motion for Leave to

File Delayed Appeal, stating – without elaboration:

> "Upon consideration of appellant's motion for a delayed appeal,
>
> It is ordered by the Court that the motion is denied.  Accordingly,
> this cause is dismissed."

(Doc. #6, Exh. 22).

In the present habeas case O'Dell's submits a copy of a letter dated April 28, 2009

concerning the library computer problems at the Lebanon Correctional Institution.  (Doc.

5

#4 at 76). A legal services librarian wrote the letter under the letterhead of the Ohio Department of Rehabilitation and Correction, and she addressed it to the Clerk of the Ohio Supreme Court. *Id.* She wrote, "This letter is in regards to inmate Randal O'Dell... It is [sic[3]] understanding that Inmate O'Dell had a deadline of April 20, 2009 and has missed this deadline." (Doc. #4 at 76). She continued, "however, due to minor technicalities with our new computer system upgrades, the computers ha[ve] been down from March 20, 2009 until April 16, 2009. I hope you will not allow this untimely filing to prejudice Inmate O'Dell as he submits his appeal outside of his control that caused his appeal to be filed late." *Id.*

The record in the instant federal habeas case does not indicate when – or whether or not – the Clerk of the Ohio Supreme Court received this letter before O'Dell was denied leave to file a delayed appeal. *See* Doc. #6, Exh. 21 at 327-53 (letter not attached).

## IV.    O'Dell's Habeas Corpus Petition and Motion to Abey

Having obtained no relief in the Ohio courts, O'Dell has turned to this Court raising the same ten claims he raised both on direct appeal in the Ohio Court of Appeals and in support of his Motion for Leave to File Delayed Appeal in the Ohio Supreme Court. *Compare* Doc. #2 at 56-70 *with* Doc. #6, Exh. 15 at 141, 146-161; Doc. #6, Exh. 21 at 329-32.

O'Dell has also filed a Motion to Hold Habeas in Abeyance. (Doc. #4). He seeks

---

[3]  Presumably, "my."

an abeyance because he anticipates rulings by the Ohio Supreme Court on two issues that
would render his sentences null and void.  *Id.*  By way of explanation O'Dell mentions
that the Ohio Supreme Court has issued opinions on issues of Post-Release Control and is
presently considering Ohio's sexual-predator statutes.  O'Dell asserts, "Both of these
issues **MAY** affect me and could render my sentences null.  If so there might not be a
need to seek Federal Habeas ... [relief]."  *Id.* at 74 (capitalization and emphasis in
original).

Abeyance of this case is unwarranted because O'Dell has not identified what issue,
case, or anticipated decision by the Ohio Supreme Court might nullify his convictions or
sentences.  Additionally, in the instant habeas case O'Dell faces a procedural problem
unrelated to the merit-based matters he eludes to in his Motion to Hold Habeas in
Abeyance.  As will be explained next, O'Dell's procedural problem is insurmountable,
and therefore bars him from obtaining a federal habeas review of his claims on the merits.
*See Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (and cases cited therein).  Given
this, there is no need in the present case to await further developments in Ohio Supreme
Court case law.

Accordingly, O'Dell's Motion to Hold Habeas in Abeyance lacks merit.


V.    **Discussion**

A.    **Procedural Default and Waiver**

Respondent contends, in part, that O'Dell has waived federal habeas review of all

his claims by committing a procedural default – specifically, failing to file a timely direct appeal in the Ohio Supreme Court.

To obtain federal habeas review, the record must show that O'Dell properly raised his federal constitutional claims in the Ohio courts pursuant to Ohio's adequate and independent procedural rules. *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004); *see also Buell*, 274 F.3d at 348 (citing, in part, *Coleman v. Thompson*, 501 U.S. 722, 749 (1991)); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If O'Dell did not follow Ohio's adequate and independent rules of procedure and the Ohio courts enforced those rules against him, then his procedural default might result in a waiver of one or more of his claims for purposes of federal habeas review. *See Bonilla*, 370 F.3d at 497; *see also Buell*, 274 F.3d at 349.

O'Dell violated two state procedural rules by failing to file a timely direct appeal in the Ohio Supreme Court. The procedural rules – Ohio S.Ct. Prac. Rule II, § 2(A)(1)(a) and Rule III, §1 – required him to file a notice of appeal and a Memorandum in Support of Jurisdiction in the Ohio Supreme Court within forty-five days from the Ohio Court of Appeals' entry of judgment.

The Ohio Court of Appeals issued its decision and entry of judgment rejecting O'Dell's direct appeal on March 6, 2009. (Doc. #6, Exhs. 19, 24). O'Dell thus had until April 20, 2009 to file his Memorandum in the Ohio Supreme Court. *See* Ohio S.Ct. Prac. Rule II, § 2(A)(1)(a) and Rule III, §1. Although he did not miss the deadline by much, he missed it nonetheless, as he acknowledged in his Motion for Leave to File Delayed

Appeal. *See* Doc. #6, Exh. 21 at 327-28.

O'Dell committed the same procedural default as the petiioners in *Smith v. State of Ohio Dept. of Rehabilitation and Corrections*, 463 F.3d 426, 432 (6th Cir. 2006) and *Bonilla*, 370 F.3d at 497. The United States Court of Appeals for the Sixth Circuit explained, in the latter case:

> "Bonilla failed to file a timely notice of appeal with the Ohio Supreme Court and his motion for leave to file a delayed appeal was denied by that court apparently because he failed to demonstrate adequate reasons for his failure to file a timely notice of appeal or to otherwise comply with the provisions of Ohio Sup. Ct. R. II, Section 2(A)(4). Where a state court is entirely silent as to its reasons for denying requested relief, we assume that the state court would have enforced any applicable procedural bar. *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).

*Bonilla*, 370 F.3d at 497. This reasoning applies equally in the instant case for two reasons. First, O'Dell (like Bonilla) did not file a timely notice of appeal in the Ohio Supreme Court. Second, the Ohio Supreme Court's Entry in O'Dell's case (like in Bonilla's case) was silent as to its reasons for denying O'Dell leave to file a delayed appeal. *See* Doc. #6, Exh. 22. Consequently, O'Dell committed the same procedural default found in *Bonilla*, 370 F,3d at 48-97 and again in *Smith*, 436 F.3d at 432.[4]

> ## B. Cause and Prejudice; Miscarriage of Justice

O'Dell can avoid the preclusive impact of his procedural default (1) if he shows

---

[4] Typically, the four-part test set forth in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986) applies to determine whether a habeas petitioner committed a procedural default in state court. There is no need to do so here because O'Dell committed the same procedural default identified in *Bonilla* and *Smith*, 463 F.3d at 432 ("Denial of review on the basis of Rule II § 2(A)(4)(a) is an adequate procedural ground to foreclose federal habeas review." (citing *Bonilla*, 370 F.3d at 494)).

cause and prejudice or (2) if he shows a fundamental miscarriage of justice will result from the failure to consider his claims on the merits.  *See Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Monzo v. Edwards*, 281 F.3d 568, 575 (6th Cir. 2002).  "In order to establish cause, a habeas corpus petitioner must show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule."  *Bonilla*, 370 F.3d at 498 (quoting in part *Murray*, 477 U.S. at 494-95).

Respondent correctly recognizes that O'Dell alerted the Ohio Supreme Court – in his Motion for Leave to File Delayed appeal – about the computer problems in the Lebanon Correctional Institution's law library as well as, in O'Dell's words, problems with a "back log of inmates vying for time" to use the law library.  (Doc. #6, Exh. 21).  In addition, accepting O'Dell's explanation as true, *see id.*, at 328, 332, and accepting the validity of the Memos written under the Ohio Department of Rehabilitation and Correction letterhead, no doubt remains over the fact that the law library computers were "down" from March 20, 2009 until April 16, 2009, due to no fault of O'Dell's.  Although the lack of working computers and Westlaw during this period constituted an objective factor beyond O'Dell's control, these problems did not prevent him from timely filing a handwritten material in the Ohio Supreme Court.  The record, moreover, does not document or support the existence of any objective factor external to O'Dell or his defense that prevented him from sending a timely handwritten Notice of Appeal and Memorandum in Support of Jurisdiction to the Ohio Supreme Court.  Indeed, the Ohio

10

Supreme Court Rules of Practice permit handwritten filings in an emergency.  Ohio S.Ct.

Prac. Rule VIII, §4(A)(1).  As a result, rather than hindering him, the procedural rules

themselves provided O'Dell with an avenue to file a timely Notice of Appeal and

Memorandum in Support of Jurisdiction.  *See id.*  His failure to do so was the cause of his

procedural default, rather than the lack of a working computer or Westlaw or sufficient

time to perform his legal work in the prison law library.  *Cf. Bonilla*, 370 F.3d at 498 (pro

se status, lack of legal knowledge, sudden withdrawal of counsel, limited access – four

hours per week – to a prison library, did not constitute cause for procedural default).

Lastly, O'Dell has not made a colorable showing of actual innocence.  Indeed, it is

problematic for him to do so because the jury at his trial resolved what was mainly a

dispute over witness credibility.  O'Dell, therefore, has not shown that a fundamental

miscarriage of justice will occur if his claims are not reviewed in this case.  *See id*.

Accordingly, O'Dell has waived federal habeas review of the claims he raises in

his Petition.

## VI.  <u>Certificate of Appealability</u>

Before O'Dell may appeal a denial of his habeas petition, he must first obtain a

certificate of appealability.  28 U.S.C. §2253(c)(1)(A).  To obtain a certificate of

appealability when a habeas petition is denied on the merits, the petitioner must make a

substantial showing of the denial of a constitutional right.  *Slack v. McDaniel*, 529 U.S.

473, 484 (2000).  This is accomplished by showing that reasonable jurists could debate

whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack*, 529 U.S. at 484 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). If the District Court dismisses the petition on procedural grounds without reaching the merits of the constitutional claims, the petitioner must show that jurists of reason would find it debatable whether the District Court is correct in its procedural ruling. *Slack*, 529 U.S. at 484.

The conclusions reached herein are not debatable by jurists of reason and do not otherwise present issues adequate to deserve encouragement to proceed further. Consequently, a certificate of appealability should not issue in this case.

## IT IS THEREFORE RECOMMENDED THAT:

1.    Respondent's Motion to Dismiss (Doc. # 6) be GRANTED;

2.    Randal T. O'Dell's Petition for a Writ of Habeas Corpus (Doc. #2) be DENIED and DISMISSED;

3.    His Motion to Hold Habeas in Abeyance (Doc. #4) be DENIED;

4.    A certificate of appealability under 28 U.S.C. §2253(c) not issue; and

5.    The case be terminated on the docket of this Court.


October 7, 2010

                                         s/Sharon L. Ovington
                                        Sharon L. Ovington
                                        United States Magistrate Judge


12

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).